## BROWN & A. *v.* REDING & A.

Powers of county conventions and of their committees.
Powers of county commissioners.

Neither under the Revised or General Statutes had a county convention authority, by a committee or otherwise, to act with the county commissioners in the purchase of furniture and other personal property for the use of the county poor farm; but that authority is conferred upon the county commissioners alone.

Where a committee of such county convention claim a right to act with the county commissioners in the purchase of furniture and articles for such county farm, but no serious public injury is disclosed, a court of equity will not interfere by injunction, but leave the parties to a remedy by *quo warranto.*

IN EQUITY. This is a bill brought by the county commissioners of the county of Rockingham against the defendants, a committee of the county convention, to restrain them from interfering in the purchase of furniture and other articles for the county poor farm.

The answer alleges, that under a resolution of the county convention the defendants have claimed to act in conjunction with the county commissioners in the purchase of stock, tools, and necessary articles for the county farm, but that they have never proposed or threatened to make such purchases alone, or without the concurrence of the plaintiffs.

The cause was heard upon the bill and answer.

*Small*, for plaintiffs.

This bill is brought by James C. Brown and two others as county

commissioners and tax payers, for an injunction to restrain the defendants, John R. Reding and others, who were appointed a building committee by the county convention, for the purposes set forth in the resolution recited in the bill; and the object of the bill is to restrain the defendants from purchasing stock, tools, or vehicles for the county farm, or furniture for the county house upon the farm, with the funds or upon the credit of the county, either directly or indirectly; and from participating with the commissioners or interfering with the commissioners in such purchases, upon the ground that the county convention has no power or authority to appoint officers or agents for such a purpose; and that the duty of making such purchases belongs to the commissioners, subject to such limitations, if any, as the convention do, and have a right by law to, impose. It is in proof that the committee claim the right, jointly with the commissioners, to make such purchases, through a committee chosen by the vote of the two boards; an equal number of the committee being chosen from each board. The building committee being in the majority, would of course have the control in the choice of the sub-committee; and the sub-committee, consisting of equal numbers from each board, could do nothing without the assent of the members of the building committee; so that, in fact, the whole power, under the resolution of the convention, and by the determination of the building committee, for the purchase of the property in question, is lodged with the building committee; and the questions are:

1. Has the county convention authority to choose or appoint such a committee as this building committee, and to clothe them with the authority that it has undertaken by the resolution to do in this case, relative to the matter in question?

It is obvious that whatever power the county convention has is derived from the legislature, as expressed in the statutes. The first authority given to the representatives of a county to form themselves into a convention is found in the Statute of 1794, Laws of 1805, p. 68, abolishing the court of general sessions, and authorizing and empowering the representatives of the county assembled at the general court to form themselves into a county convention, for the *sole purpose of granting and appropriating taxes for their county.* This power and authority were continued in the county conventions without material change until 1863. See Statutes of June 12, 1801, Laws of 1805, p. 70; Act of 1827, Laws of 1830, p. 173; Revised Statutes, p. 80, ch. 23, § 2; Compiled Laws of 1850, p. 84, § 2. The Revised Statutes, ch. 67, § 2, also provide that the court of common pleas, upon a recommendation of a majority of the representatives to the legislature from the several towns in the county, may provide, at the expense of such county, all such lands, buildings, and articles as may be necessary for the accommodation of the county poor. This was not an authority given to them as a *convention;* they need not meet together to exercise it. It was not even a check upon the court; but the authority given to the court was a new and enlarged one, growing out of the new methods of supporting the poor; and the court were bound to exercise it whenever a majority of the representatives recommended it. The act of 1863, entitled " *an act to limit and define the*

*powers of county commissioners in certain cases,*" chap. 2,735, secs. 1 and 3, is a mere *check* upon the county commissioners, and gives the convention no power to act in the matters therein specified, except *through the commissioners.* The General Statutes, chap. 22, sec. 2, vests in the county convention, exclusively, the power of raising county taxes, and authorizes the purchasing and selling real estate for the county, erecting all public buildings for the county, exceeding the expense of one thousand dollars. Neither this nor any other statute, past or existing, ever has conferred or does confer upon the convention the *power of choosing or appointing any officers or agents to do any business whatever on behalf of the county;* but all the authority conferred upon the county convention, except that of raising taxes, is intended to be, and is a *mere check* upon the county commissioners—the convention having the power to *authorize* certain acts, leaving the acts to be done through and by the constituted authorities chosen by the people for that purpose. If any confirmation of this view, in the absence of all statute provisions to the contrary, were necessary, it may be found in section 6 of chapter 22, General Statutes, which provides that a record of the doings of the convention shall be kept, and transmitted to the clerk of the county commissioners, who shall record the same at length in the book of records of the county provided for that purpose. This is plainly in the nature of a warrant for the commissioners to act upon matters concerning which they have no right to act without the authority of the convention. I submit, therefore, that the county convention had no authority to appoint or choose this building committee, the county commissioners being the only authorized agents of the county to do the acts contemplated in the resolution; and that said committee have no authority in the premises, and that, therefore, their acts in relation to the same are utterly void; and that they have no authority to make or in any way participate in the contemplated purchases.

II. What is the authority of the county commissioners in the premises ?

It may be assumed at the outset that it is immaterial, in one view of this case, whether the county commissioners have any authority in the premises or not, the question being upon the right of the committee to make the contemplated purchases ; yet it is quite important that the commissioners should know what are their rights and authority upon the matters in question, since the interests of the county require that the farm should be stocked at once. By Revised Statutes, chap. 19, sec. 2, it was provided that the court of common pleas for each county should have the custody of all property belonging to the county, and see that the same is kept in good condition, and, when expedient, might authorize the county treasurer to sell and convey any part thereof for the use of the county. And by chapter 67, section 7, Revised Statutes, before cited, upon recommendation of a majority of the representatives, &c., might provide, at the expense of the county, all lands, buildings, and articles necessary for accommodation, support, and employment of the county poor. These provisions were in force at the time of the act for remodelling the judiciary in 1855 ; and by that act,—Laws, chap. 1,659,

section 37,—the county commissioners were clothed with the same authority, in relation to the financial affairs, and management and control of the property of the county, and the disposal and support of county paupers, that the court of common pleas then had.    The increased necessities of the counties for better facilities for the care and management of their poor, arising out of new methods adopted for supporting and maintaining them, were met by the commissioners, as the financial agents of the several counties, by purchasing such real estate as was necessary for such purposes, although no statute seems to have *expressly* clothed them with so extensive powers.    At length, in 1863, the act *limiting and defining the powers of county commissioners* in certain cases was passed—Laws, ch. 2,735, sections 1 and 3—prohibiting them from selling real estate of the county, and from investing in real estate for the county, to an amount exceeding $1,000, without the consent of the convention.    Thus the law stood at the time of the passage of the General Statutes; and by section 3, chapter 24, of said statutes, the county commissioners are prohibited from purchasing real estate for the county, and from selling the real estate of the county without the authority of the convention; and by the same section they are also prohibited, without such authority, from expending in any one year more than $1,000 in the erection, enlargement, and repairs of county buildings.    By section 4 of same chapter, they may, by the authority of the convention, do certain acts; but these acts all relate to *houses of correction,* and are not material to be considered here.    Section 2 provides that the county commissioners shall have the care, management, and control of all the property of the county, and may purchase such personal property for the accommodation of the courts, offices, prisons, work-houses, and *poor farms,* and the same sell and dispose of as they may think expedient, subject to the control of the county convention *in cases provided by law.* .

The authority of the commissioners is, therefore, unlimited in relation to the matters embraced in that section, except in so far as they are subject to the control of the convention *in cases provided by law.* In cases not provided by law, the convention has no power over them. What are the *cases provided by law* embraced in that section, concerning which the commissioners are subject to the convention?    So far as mentioned here, that section relates only to the purchase and sale of *personal property.*    The control of all the property of the county is committed to the commissioners.    As to the real property, it is expressly *provided by law* that the commissioners shall be subject to the control of the convention in the purchase and sale thereof; and so of the personal property for the accommodation of the prisons and work-houses, if they are to be deemed houses of correction; but as to personal property for the *accommodation of the poor farm* of the county, it is *not provided by law* that the commissioners shall be subject to the convention, and it could not have been the intention of the legislature that, as to such matters, they should be subject to the convention; for, by the 5th section of the same chapter, it is provided that " the county commissioners shall have the charge, disposal, and support of all county paupers, and

shall provide for their maintenance in the poor-houses, or houses of correction, or upon the poor farms provided by the county, &c. ;—and may appoint such overseers or agents, and employ such assistants and laborers, as they may find necessary for the transaction of the business." Therefore, if the county have a poor farm, the commissioners have charge of it, are bound to maintain the county poor upon it, and are authorized to carry it on ; and the poor could not be accommodated there without furniture for the house, the inmates could not be employed upon the farm, and the farm could not be carried on without the necessary stock, tools, and vehicles.    The legislature have not limited them in the purchase and sale of such property, have not subjected them by any provisions of law, in this regard, to the control of the convention, have provided no other agents for the purchase or sale of property, and such authority is absolutely indispensable to the commissioners, in order that they may discharge the duties that the statute expressly imposes upon them ; *and the convention have, by law, no authority to appoint any financial or other agents for the county.*    Hence, I submit, the farm being provided, the authority of the commissioners to stock and furnish it is absolute and unlimited, and the convention have no power to interfere, and any contracts made by said committee would not be binding upon the county; and no tax could be legally voted, assessed, or collected, to meet such contracts.    The committee refuse to allow any such stock or furniture to be bought, unless they participate in the purchase through a sub-committee to be chosen from the two boards. The committee are in the majority, and will control.    The commissioners, believing the committee have no authority in the premises, refuse to act with any of its members.    Therefore, if any property is bought it will be by the committee.    And I submit, that if the property should be bought by the two boards, the contracts would not be binding upon the county.

The question then is:

III. Will, or can, the court interfere by injunction against said committee ?

It may be objected that an injunction will not lie to try the title to an office.    That is not the question here.    That question can only arise when two or more persons claim the same office.    In this case the *committee are not officers.*    They do not hold or exercise any office known to the law.    At the most they are the mere agents of the convention ; and the commissioners not only do not seek their place, but deny that they have any legal place or existence, or that there is any such office.    In the first place, I submit, this court has jurisdiction to interfere, by way of injunction, to restrain public functionaries who are exercising special public trusts or functions, in cases where they depart from the power which the law vested in them, and assume power over property which the law does not give them.    Story on Equity, § 955 a.    And is not the mischief equally as great where the defendant, assuming to be a public functionary, and acting under the color of a public office, seeks to pledge the public credit, or to dispose of the public funds, in cases where he has no authority, although, in law, he is not an officer, and

has no authority at all. The first mischief here is the pledging of the public credit, without right, under color of a public office. Cannot that be restrained by injunction? In the next place, there is a direct attempt to interfere with public officers in the discharge of their public duties, by the defendants claiming a right to do so when no such right exists. Will not equity restrain them? Again, these defendants propose to interfere directly with the stocking and furnishing the farm, so that the county cannot have the benefit of their property, and the commissioners cannot take care of the poor in the manner required by law, nor without great additional expense, for which there can be no adequate remedy at law. Will not the court interfere by way of injunction, in furtherance of justice, to protect the county in the enjoyment of their property, and the commissioners in the due discharge of the duties of their office? *Boston Water Power Co.* v. *Railroad*, 16 Pick. 525.

Equity will enjoin a town against expending its money or pledging its credit for purposes for which they have no legal right to do so ; and will also restrain a town officer from expending the town money and pledging its credit for any purpose not authorized by law—*Tash* v. *Adams*, 10 Cushing 252—and will grant an injunction against town officers, to prevent the payment of money illegally assessed. *Merrill* v. *Plainfield*, 45 N. H. 126.

Will the court not also interfere to prevent a person acting under color of office, but without right, from pledging the credit of the county or expending the county's money for purposes for which he has no right to pledge or expend it? The mischief is the same in both cases.

In short, I submit, the mischief here apprehended is irreparable, and there is no adequate remedy at law, and that an injunction ought to issue.

*Hackett & Hatch*, for defendants.

I. There is no pretence that the defendants have threatened or intend to act except in conjunction with the county commissioners, and exactly as authorized by the votes of the county convention. But inasmuch as no action is proposed to which plaintiffs do not assent, no injunction can be granted on their motion.

II. If the vote of the convention were in law unauthorized, or if the defendants did propose to act without the commissioners, and without authority of the convention or of the law, this bill would not lie, and there is no occasion for interference by injunction. The defendants have no money or other property of the county within · their control ; and they cannot use its credit unless they are lawfully authorized to do so by the vote of the convention. They stand in no worse position than would any other volunteers who may supply the county farm with stock or furniture, in the hope or expectation that the county will pay for the same. Their action can occasion injury to no one but themselves. The remedy of the county will be perfect át law. Its officers, the plaintiffs themselves, have only to refuse payment for the

articles that may be purchased. A single and simple suit at law will settle the right. If the defendants choose (as public officers or private agents often have occasion to do) to supply a pressing necessity of the county, without authority, taking the hazard that their acts will hereafter be ratified, how can the court interfere? Certainly not on the common ground of irreparable injury.

We apprehend that this application is wholly without precedent, and contrary to every principle upon which courts interfere with the actions of men by injunction. The New York authorities on this subject are collected in 3 Abbott's Digest, Injunction. See sections 1 to 12, 43 and 44, 60, 62, 78, 102 to 108, 113, 259 to 263, and especially sections 19, 263. *Eastman* v. *Amoskeag M. Co.*, 47 N. H. 78, and cases cited. The extent to which the courts have gone has been to enjoin the assessment of unlawful taxes, or the unlawful expenditure of public money; but there the mischief threatened was in its nature irreparable, for it might be impossible to recover taxes once paid, or money once expended.

III. The defendants are in law fully authorized not only to act in conjunction with the commissioners as indicated in the resolutions of the convention, but to act without the commissioners if they refuse to do their duty. This authority is derived from the General Statutes, ch. 22 and ch. 24.

The history of the legislation on this subject is this: Originally the power to "make orders for the raising" of money for public buildings and all other county charges was vested in the court of general sessions of the peace. Provincial Laws, ed. 1771, p. 207; Act Feb. 9, 1791, Laws, ed. 1797, p. 55; Act Feb. 15, 1791, do. p. 346; Act June 8, 1791, do. p. 176; Act Feb. 10, 1791, do. p. 139. The court of general sessions was abolished Feb. 21, 1794, and it was made the duty of the court of common pleas to submit estimates annually to the county convention, which assembled for the "sole purpose of granting and appropriating taxes for the county," and the courts of common pleas were to expend the money "agreeable to the appropriations." Laws, ed. 1791, p. 66; Act June 12, 1801, Laws, ed. 1805, p. 70, ed. 1815, p. 87; Act July 5, 1827, Laws, ed. 1830, p. 473. The act of Dec. 16, 1828, conferred on the court of common pleas power to provide at the expense of the county "all lands and buildings" for the support of the poor, &c. But it was silent as to furniture, &c. Laws, ed. 1830, p. 302.

The Revised Statutes of 1842 give the convention power to grant and appropriate taxes, &c., ch. 23. To the court of common pleas it gave the custody of all property of the county, ch. 19, and authorized them to provide lands, buildings, and articles necessary for the support of the poor, on recommendation of a majority of the representatives of the county, ch. 67.

The board of county commissioners was created by the act of July 14, 1855, Laws, p. 1,551, and they were to have all the powers in relation to the financial affairs of the county, the management of its property, and the support of the paupers, which had been vested in the court of common pleas. By the act of July 9, 1863, all appropria-

o

tions for the purchase and sale of real estate, erection, &c., of build-
ings, must be made by the convention ; and the commissioners have no
power to use the money or credit of the county for any such purpose
to an amount exceeding $1,000.    Laws, p. 2,715.

The General Statutes are plainly intended to be a revision and alter-
ation of the law before existing in relation to these matters, and that
statute plainly enough gives to the convention all the power we claim.

The whole power of the county commissioners over the property of
the county and to purchase personal property for the county is " sub-
ject to the control of the county convention, in cases provided by law."
Gen. Stat., ch. 24, sec. 2.    Now the 4th section of the same statute
" provides " that the commissioners may obtain for the county " lands,
buildings, and *personal property*," " when so authorized by the county
convention."    The purchase of personal property, then, is one of the
things the commissioners may do, " subject to the control of the coun-
ty convention," " and not otherwise"—sec. 2.    In this instance the
convention have exercised their control, by authorizing the commis-
sioners to act in conjunction with a committee of the convention.
That committee stands in the place of the convention, and is its rep-
resentative.    The control of the committee is precisely the same as
that of the whole body of the convention, if it could be personally
present.    It is the plain duty of the commissioners to act under that
control.    The statute is imperative, and the commissioners, if they
refuse, may probably be compelled " to provide" " personal property
necessary for the support, education, and employment of the poor"
(sec. 4), in conjunction with and under the control of the committee.
The commissioners certainly cannot act except under this control ;
and the statute does not intend that they shall control the convention
by any refusal to act.

If they do refuse to act, what follows ? that the work ceases, and
the provision for the support of the poor cannot be made ?    The sup-
port of the poor by the county, the provision of suitable accommoda-
tions for the courts, offices, prisons, &c., are imperatively imposed
upon the county, and are of immediate necessity.    The convention
may raise taxes and issue bonds for these purposes.    How, if the com-
missioners are extinct, incapable, or refuse to act ?    Must the business
of the county cease, the courts adjourn, the prisoners go at large, and
the poor perish, because nobody but the commissioners can lawfully be
authorized to make the necessary purchases ?    Such is the reasoning
of the plaintiffs.    But we say that the authority to control, vested in
the convention, implies the authority to ACT, if the commissioners will
not ; and the action of the convention, by its own agents or committee,
in such a case, would be necessary and lawful.

The fact that the legislature has vested in the convention powers to
raise taxes, authorize the purchase, &c., of real estate, and the issue
of bonds (ch. 22, sec. 2), and to authorize and control the " care,"
" management," " purchase," and " sale of personal property" (ch. 24,
sec. 2), " the purchase" and " sale" of real estate, and " erection" &c.,
of buildings (ch. 24, sec. 3), and the provision, at the expense of the

county, of real and " personal property" for houses of correction, for
the " accommodation, support, education, and employment of the poor,"
&c., and the appointment of " suitable officers for the management
thereof," &c., &c. (ch. 24, sec. 4), necessarily indicates that the con-
vention has full capacity to execute these powers.  The commissioners
are named as convenient instruments in their hands.  If they will
not or cannot work, common sense teaches, and the public necessities
require, that the convention still shall exercise their powers by such
agents as the nature of the case may demand.

If any injunction in the present case is required, it is that the com-
missioners do their duty in the manner indicated by the convention,
and subject to the control by it imposed.  And they are not entitled
to be heard here, alleging their own wrongful neglect of duty as a rea-
son for compelling the inactivity of the convention and its committee.
The power of the county conventions to act by committees has been
often exercised, as twice in Rockingham county in building jails, &c.

BELLOWS, C. J.  The question is, whether the county convention has
power to appoint a committee with authority to act in conjunction with
the county commissioners in the purchase of furniture and other per-
sonal property for the use of the county farm.  If the county conven-
tion has power to appoint such committee to act with the county com-
missioners as a joint board, it can, of course, by appointing on this com-
mittee a number greater than the board of commissioners, take from
those commissioners the control of those purchases.

By the General Statutes, chap. 24, § 2, it is provided that the county
commissioners shall have the care, management, and control of all the
property of the county, and may purchase such personal property for
the accommodation of the courts, offices, prisons, work-houses, and
poor farms of the county, and the same sell and dispose of, as they
may think expedient, subject to the control of the county convention
in cases provided by law.

In what cases, then, is it provided by law that the county convention
shall have control?  By ch. 22, sec. 2, there is vested in the county
convention the power to raise county taxes, to authorize the purchase
of real estate for the use of the county, and the sale and convey-
ance of its real estate, the erection, enlargement, or repair of buildings
for the use of the county, exceeding the expense of one thousand dol-
lars, and to authorize the issuing of bonds for the debts of the county.
Section 6 of this act provides for a record of the doings of the
county convention, and that it shall be transmitted by its clerk to the
clerk of the county commissioners, to be by him recorded, and a copy
of every vote for raising a county tax, to the county treasurer.

Section 3 of ch. 24, relating to county commissioners, provides that
the commissioners, when authorized by vote of the county convention,
may purchase real estate for the use of the county, and may sell and
convey any real estate belonging to the county; and they shall not
expend in the erection, enlargement, or repair of buildings, more than
one thousand dollars in any year without such authority.

By section 2 it will be observed that the authority to purchase personal property for the accommodation of the county poor farms is conferred upon the county commissioners as they may think expedient, subject to any control that may be given by law to the county convention. The cases where this control is provided are in the purchase and sale of real estate, and in the erection, enlargement, or repair of buildings costing more than one thousand dollars in any one year; and by section 4 of the same chapter, the authority of the county convention is necessary to enable the commissioners to provide and furnish a house of correction.

These limitations on the authority of the commissioners are in the same chapter which confers the authority, and it is very clear that no control over the purchase of personal property for the use of the county farm is given to the convention unless it can be found in the limitation of expenditures for the repairs of buildings. In terms this clearly does not include the purchase of furniture, stock, and the like, for a poor farm, and we see no reason for giving it such an enlarged construction as to embrace them.

Corresponding to the limitations in this chapter are the powers conferred upon the county conventions in chapter 22; that is, besides raising county taxes, to authorize the purchase of real estate for the use of the county, and the sale and conveyance of its real estate, and the erection, enlargement, or repair of buildings for the county exceeding the expense of one thousand dollars.

Nor is there anything in the previous legislation on the subject that suggests a construction that would authorize the county convention to control the purchase of furniture, stock, and other personal property for the use of the poor farm.

By the Provincial Law of 1791, the court of general sessions was authorized to make orders for the raising of money for building or repairing court-houses, prisons, houses of correction, or other public buildings, and for the payment of all other county charges, giving that court the care of building prisons, and inspecting and repairing all prisons, court-houses, and other necessary public edifices.

By Law of June 10, 1791, the court of sessions was to have the care of building and repairing such buildings; and by Law of February 15, 1791, that court was authorized, if it thought best, to build or otherwise provide houses of correction, make rules and regulations, and appoint officers to manage the same. By Law of February 21, 1794, ed. 1805, p. 68, the courts of general sessions of the Peace were abolished, and the jurisdiction transferred to the court of common pleas.

By Law of June 12, 1801, ed. 1805, p. 71, provision is made for county conventions during the sessions of the general court, and requiring the judges of the court of common pleas to determine what moneys are in their opinion necessary to be raised in the respective counties for the year; a statement of which, with the general purposes for which they are needed, was to be laid before the representatives of the county in June, who were authorized to form themselves into a convention for the sole purpose of granting and appropriating taxes for

the county, to be assessed by the county treasurers as they were heretofore, when granted by the court of sessions, and directing the judges of the court of common pleas to make orders on the treasurers for paying out such moneys, agreeably to the appropriations made by such conventions.

These provisions were substantially re-enacted July 5, 1827, ed. 1830, p. 473; and by Law of December 16, 1828, ed. 1830, p. 302, the court of common pleas was empowered, if it saw fit, to provide, at the expense of the county, all such lands and buildings as might be necessary for the accommodation, support, and employment of the poor chargeable to such county, and for a house of correction; to appoint proper officers for the management thereof, and to make needful rules and regulations for the same.

By the Revised Statutes, ch. 19, sec. 2, the court of common pleas has the custody of all property belonging to the county, and is to see that it is kept in good condition, and when expedient may authorize the county treasurer to sell and convey any part thereof. By chap. 67 of those Statutes, sec. 2, the said court, upon a recommendation of a majority of the representatives from the several towns composing the county, may provide at the expense of the county all such lands, buildings, and articles as may be necessary for the accommodation, support, and employment of the poor, and may make needful rules and regulations, and appoint suitable officers to manage the same.

By Law of July 14, 1855, chap. 1,659, § 37, the power of the court of common pleas in relation to the financial affairs of the county, and the management and control of its property, and the disposal and support of county paupers, was transferred to the county commissioners.

So it remained until the Law of July 9, 1863, chap. 2,735, which provided that all the appropriations for the purchase of real estate, and for the enlargement, repairs, or erection of buildings, shall be made by the county conventions; and the county commissioners shall have no power to use the money of the county or pledge its credit for the purchase of real estate, or to enlarge, erect, or repair buildings to an amount exceeding one thousand dollars, without a vote of the county convention; or have the power ·to sell any of its real estate without such vote. These provisions are substantially embodied in the General Statutes before quoted.

The result of this history of our legislation is this: That in 1801 provision was made for county conventions, by which money was to be granted and appropriated for county purposes; and this provision has ever since been retained.

From 1794, the court of common pleas had the care of building and repairing all prisons and other edifices for the county; and by law of 1828 this court was empowered to provide, at the expense of the county, all such lands and buildings as were necessary for the accommodation, support, and employment of the poor, and for a house of correction. By the Revised Statutes this court had the custody and care of the county property, and might authorize a sale of it by the treasurer, and, on the recommendation of a majority of the representatives of the

county, might provide all such lands, buildings, and articles as might be necessary for the accommodation, support, and employment of the poor. And by law of 1855 this power was transferred to the county commissioners. Previous to the law of 1863, the county conventions were authorized to grant and appropriate taxes ; but by law of 1863 the terms were, that all appropriations for the purchase of real estate, and for the enlargement, repairs, and erection of buildings for the use of counties, shall be made by the county conventions; and by the General Statutes they are authorized *to raise county taxes.*

If, from the terms to raise and appropriate taxes, standing alone, it might be argued that the power to expend the money was to be implied, we think that argument is fully answered by the fact that the law at the same time has provided for the expenditure of this money by its financial agents,—the court of common pleas or the county commissioners.

So by the General Statutes the authority is simply to raise county taxes, and to authorize the purchase of real estate, and the erection, enlargement, and repairs of buildings when the expense exceeds $1,000; and this is clearly a limitation of the county commissioners' authority, and, being silent as to the purchase of personal property, it may fairly be presumed that the limitation did not extend to that.

We are, then, of the opinion that the county convention had no power to appoint a committee to control the county commissioners in the purchase of furniture, stock, and other personal property for the poor farm.

It is apparent that from 1855 to 1863 the county commissioners alone had authority to purchase and repair and furnish the poor farms ; and, although the recommendation of a majority of the representatives was necessary, it is obvious that the convention was not authorized to do this, but its duty was merely advisory.

The act of 1863 was more explicit, in requiring a vote of the county convention as a pre-requisite to the action of the county commissioners, and was in fact merely a more distinct limitation of the authority of the commissioners, but by no means a transfer of it to the county convention or a committee appointed by it ; and we discover no intention in the legislature to transfer this agency from the commissioners to the convention or its committee, but merely to require the assent of the convention to matters of such magnitude as the purchase and sale of real estate, or the expenditure of more than one thousand dollars in any year in the erection, enlargement, or repairs of buildings, leaving matters of less importance to the discretion of the county commissioners, where very clearly it could be most conveniently and judiciously exercised. Especially would it be so in the purchase of furniture and other articles for the poor farm, as their needs might from time to time require.

The question is one of legislative intention, to be gathered from the various enactments; and we can see no purpose to make the county convention the agent of the county in the management of these affairs.

The question then is, whether the plaintiffs are entitled to an injunction to restrain the defendants from acting in the purchase of articles

for the poor farm. The answer alleges that the defendants have claimed, in accordance with the resolutions of the county convention, the authority to act in conjunction with the county commissioners in the purchase of stock, tools, and necessary articles for the county farm, but that they have never proposed or threatened to make said purchases alone or without the concurrence of the plaintiffs.

As the case is heard upon bill and answer, these allegations in the answer must be taken to be true; and the question then arises, whether there is anything in the bill not answered that shows such an injury from this claim of the defendants as to justify the granting of an injunction. Where a party under color of public authority undertakes to do what he is not authorized to do, and his act will work an injury to another for which there would be no adequate remedy at law, equity will interfere by injunction. *Freewin* v. *Lewis*, 4 Mylne & Craig 254; 2 Story's Eq. Jur., § 955 a.

In *The Attorney-General* v. *The Utica Ins. Co.*, 2 Johnson Ch. 371, which was an information against defendants for exercising the business of banking without authority of law, with a motion by the attorney-general for an injunction to restrain the further exercise of that business, the court held that it had no jurisdiction in the cause, and denied the motion. It was much considered by the learned Chancellor, and the authorities cited and considered; and the court held that equity had no jurisdiction of an offence against a public statute, or matters of a criminal nature, unless they touch the enjoyment of property. See p. 378.

In *Mohawk & Hudson Railroad Co.* v. *Artcher & al.*, 6 Paige Ch. 83, it was held that equity has jurisdiction to interpose by injunction where public officers are proceeding illegally and improperly under a claim of right, or where the exercise of such a jurisdiction is necessary to prevent a multiplicity of suits; and the court refused to dissolve an injunction restraining the exercise of a continued right of passing across and through the complainants' fixtures, to the permanent and continued injury of their property. In this case the defendants were exercising a power not authorized by law, to the injury of private individuals; and it was upon that ground that the court assumed jurisdiction.

Upon the same ground of injury to individuals, the court restrained by injunction the cutting down a bank and draining a small lake by which the plaintiff's mills would be injured, holding that the law under color of which the defendants acted did not give them such authority. *Belknap* v. *Belknap*, 2 Johns. Ch. 463. So where the turnpike commissioners entered on plaintiff's land to dig gravel in what was his garden, the court restrained the defendants by injunction, saying they would do it only in a very plain case, where it was free from doubt. *Hughes* v. *Trustees of Morden College*, 1 Ves. 188; and see other cases cited in *Belknap* v. *Belknap*, before cited.

So injunctions may be granted to restrain the paying out money by town officers illegally, or enforcing the collection of an illegal tax; but it is upon the application of a tax payer who would be injured by

such acts.  *Brown* v. *Marsh*, 21 N. H. 81 ; *Merrill* v. *Plainfield*, 45 N. H. 126.

In ordinary cases, where no injury to individuals is to be apprehended, equity will not interfere at the instance of a private person ; and for the mere excess of authority by persons acting under color of law, equity will not take jurisdiction on the application of the attorney-general, unless there be cause to apprehend some irreparable public injury, such as injury to the public health or safety; but the proper remedy is at law, by a proceeding in the nature of a *quo warranto*.  See *Attorney-General* v. *The Utica Ins. Co.*, 2 Johns. Ch. 371, before cited.

In *Hagner* v. *Heyberger*, 7 Watts & Serg. 104, 2 Eq. Dig. 69, § 107, it was held that an injunction will not issue to restrain a person from discharging the duties of a school director, he claiming to hold that office ; as the right to hold it must be tried by *quo warranto*.

In case irreparable public mischief was to be apprehended, the attorney-general would be the proper person to proceed, although we are not prepared to say that the application could not be made by the county commissioners, who might be regarded as representing the county, as in *Hall* v. *Somersworth*, 39 N. H. 511.

But the difficulty here is, that no such injury arising from the claim of the defendants is disclosed as would justify the interference of this court by injunction.

As it now appears before us, it is merely a question of authority ; and that should be settled by a *quo warranto*.