Grafton,
Aug. 11, 1950. } No. 3960.

SCHOOL DISTRICT NO. 3 IN LISBON

*v.*

SCHOOL DISTRICT NO. 1 IN LISBON.

*Nighswander & Lord* (*Mr. Nighswander* orally), for district No. 3.

*Dodge & Moulton* (*Mr. Moulton* orally), for district No. 1.

*George W. Pike* (by brief and orally), *pro se.*

DUNCAN, J. Since the parties join in seeking a determination of the questions presented, no consideration need be given to the propriety of the form in which the proceedings are brought. "Following the practice in this jurisdiction, we therefore proceed to a consideration of the merits of the controversy, without further attention to what are here deemed to be inconsequential matters of form." *Tirrell* v. *Johnston*, 86 N. H. 530, 532.

The questions presented are controlled primarily by legislation adopted in 1885 and 1891, and now appearing in R. L., c. 138, ss. 1, 32 and 36. Under the school districting act of 1805 (7 Laws of N. H. 467), New Hampshire towns were permitted to divide into districts, a process which was increasingly utilized until soon after mid-century the total number of school districts exceeded 2300. See Bishop, Development of a State School System (1930) at *p.* 53. Shifts in centers of population and changes in economic circumstances produced a "childless condition" of districts which culminated in the enactment of chapter 43 of the Laws of 1885. *School District* v. *Concord*, 64 N. H. 235, 240. This act provided that "each town shall hereafter constitute a single district for school purposes" (Cf. R. L., *c.* 138, *s.* 1), and abolished the division of towns into districts except for "districts organized under special acts of the legislature." As to such districts, by subsequent enactment effective on the same date as

chapter 43 (Laws 1885, *c.* 89) it was provided that dissolution and union of a "special district" with the town district might be effected by majority vote of the special district. (Cf. R. L., *c.* 138, *s.* 36; see also, Laws 1887, *c.* 110.) In the following year, it was held that "special districts," or "districts organized under special acts of the legislature" were those having independent and complete organizations within themselves, including those districts which had adopted the provisions of the Somersworth Act of 1848. (Laws 1848, *cc.* 631, 718) *Sargent* v. *District,* 63 N. H. 528; *Toussaint* v. *Fogarty,* 80 N. H. 286.

A preliminary question presented in this case is whether school district No. 1 in Lisbon is a "special" school district within the meaning of this legislation. Its records prior to 1902 cannot be produced. Occasionally its later records have described it as a "special district." Early school committee reports, presumably made in compliance with C. S., *c.* 77, *s.* 16 or G. S., *c.* 81, *s.* 19, recite that it was "organized under the Somersworth Act." Reports of Lisbon Superintending School Committee, 1858, 1859, 1868, 1877. It is not disputed that its organization continued to function after passage of chapter 43 of the Laws of 1885. In 1887 the Legislature annexed property in the "town school district" in Landaff to "district No. 1, or the 'village district,'" in Lisbon, thus recognizing the latter's continued existence despite the abolition in 1885 of all but "special districts." Laws 1887, *c.* 295. For other legislative recognition, see Laws 1889, *c.* 177; Laws 1911, *c.* 294; Laws 1907, *c.* 215 (repealed by Laws 1939, *c.* 271). In the absence of the records of the district, this evidence may properly be taken to establish its character as a special district. Wig. Ev., *s.* 1631, *et seq.*; *Bow* v. *Allenstown,* 34 N. H. 351. See also, McQuillin, Municipal Corporations (3d *ed.*), *s.* 3.64; *Ferguson* v. *Clifford,* 37 N. H. 86, 95; *Dalton* v. *Bethlehem,* 20 N. H. 505; *Tuftonboro* v. *Willard,* 89 N. H. 253.

Were we concerned solely with the provisions of *s.* 36, *c.* 138, R. L., (originally Laws 1885, *c.* 89), there would be no doubt that the action of the special district (No. 1) at its meeting of March 6, 1950, operated to effect its dissolution and union with the town district (No. 3). Under the terms of the statute, such a result may be accomplished by action of the special district alone. The town district however takes the position that because the special district has maintained a high school for many years, its union with the town district is dependent upon adoption by the town district of a "vote to receive said special district" (R. L., *c.* 138, *s.* 32); and that since such a vote has never been

taken no union of the districts has occurred. The effect of the statutory provisions relied upon by the town district is thus decisive of the major question presented.

The provisions of s. 32, c. 138, R. L., were first enacted in 1891, in amendment of c. 89 of the Laws of 1885 (now section 32, c. 138, R. L.) Laws 1891, c. 64. The bill as originally presented to the Legislature (H. B. 354), provided that when a special district voted to dissolve and unite with a town district, if the special district had maintained a high school for the five years next preceding, the town district should thereafter be required to maintain a high school according to certain standards specified by the act. Section 3 of the bill provided that "any high school hereby established" might be discontinued or its location changed only by the supreme court, upon petition and a finding that the educational interests of the town district so required.

The first section of the bill was amended in the Senate by insertion of the words "if said town district shall vote to receive said special district," as they now appear in s. 32, c. 138, R. L., and without other change was enacted into law. 1891 Journals, pp. 276, 1253, 1254, 1271. Section 3 of the act has since been amended and revised, until it now forbids the discontinuance of any high school except by the superior court upon petition and appropriate findings. Laws 1905, c. 20; Laws 1921, c. 85, pt. IV, s. 34; P. L., c. 119, s. 34; R. L., c. 138, s. 34; Laws 1943, c. 41.

The conclusion is inescapable that the purpose of the amendment to the first section of the original bill in 1891 was to permit a town district to determine for itself whether a special district should unite with it when the latter had maintained a high school which the town district would be required to continue. Under laws previously in effect, high schools might be established by a two-thirds vote of a district, and discontinued by a like vote. Laws 1881, c. 23. The act of 1891 did not change this authority, if exercised by a special district nor limit its exercise by town districts except under the conditions specified by the 1891 act. High schools established and maintained by the town district might still be discontinued by vote of the district until the law was changed in 1905. Laws 1905, c. 20, supra. Thus it would seem that a special district which had maintained a high school for only four years might still unite with a town district by its own vote alone, and the town district might if it chose thereupon vote to discontinue the high school. In any event, the 1891 act had no application where no high school of five years' standing was involved; the special district might compel a union. But where such a school

was involved, the town district was to be required to unite and to maintain a high school only if it consented to do so.

Changes in the law with respect to discontinuance of high schools have broadened the prohibition against discontinuance contained in section 3 of the 1891 act by eliminating possibilities which existed after it was passed, and adding to the requirements with respect to petitions seeking discontinuance by the court. No district may now discontinue a high school of its own motion. For this reason, under the present law the reasons which prompted the enactment of *s.* 1, *c.* 64, Laws 1891 do not exist. Other provisions assure that high schools will be continued unless district interests require otherwise. The section today serves chiefly to permit defeat of the union of a special with a town district, despite the strong policy which favors unification into town districts. Had the later changes in the law enacting the general prohibition against discontinuance of high schools been made without reference to the provisions of *s.* 1, *c.* 64, Laws of 1891, they might reasonably be held to have superseded the 1891 act. See *Tilton v. Sanbornton,* 78 N. H. 389. But the unmodified provisions of that section have been re-enacted with such persistence as to leave no doubt of their continuing effect in the specific situation here presented. Laws 1921, *c.* 85, IV, *s.* 32; P. L., *c.* 119, *s.* 32; R. L., *c.* 138, *s.* 32.

"We are not, however, to inquire into the motives of the legislature, or to judge of the wisdom of their acts. Our plain and simple duty is, to declare and apply the law . . . . " *Farnum's Petition,* 51 N. H. 376, 378. We are therefore constrained to hold that no dissolution or union resulted from the action of district No. 1, and that none will result unless district No. 3 shall within a reasonable time "vote to receive" the special district. The vote of the special district was, in accordance with the statutes, a vote "to dissolve . . . and unite." Since it is presently ineffective as to union, it is likewise ineffective as to dissolution. Since the status of the districts remains unchanged, the conclusion reached dispenses with the need to answer a number of questions raised. It operates to invalidate the action taken at the meeting of district No. 3, under article 8, leaving that district without appropriation for the coming year. At any special meeting called for the purpose of appropriation, the question of voting to receive the special district may also be considered. Since district No. 1 is not dissolved, voters of that district will not be qualified to vote at any meeting of district No. 3.

*Case discharged.*

JOHNSTON, C. J., was absent: the others concurred.