Cheshire
No. 7132

CHESHIRE COUNTY CONVENTION

v.

CHESHIRE COUNTY COMMISSIONERS

October 31, 1975

*Edward J. O'Brien,* county attorney, by brief and orally, for the plaintiff.

*Faulkner, Plaut, Hanna & Zimmerman (Mr. George R. Hanna* orally) for the defendant.

LAMPRON, J. Petition for a declaratory judgment by the Cheshire County Convention and one county commissioner, Harold E. Savage, against the Board of Cheshire County Commissioners. By its petition the plaintiffs ask in substance that the superior court order the board of commissioners to take all necessary action to invite bids on a new courthouse to be located on the Fuller Park site, so-called, in Keene; and, the necessary funds being available or authorized, to take whatever action is necessary to bring about the completion of a new courthouse on that site. The Fuller Park site is also referred to as the Armory site and the Washington Street site.

A preliminary hearing was held before *King,* J., who granted a motion by the defendants that he disqualify himself from acting in any manner on the petition. The court then ordered the facts heard by a Master, *Robert L. Chiesa,* Esq., and stated that the court's sole role would be to approve the findings of the master and to forward all questions of law to this court in the event of any appeal. The parties agreed to certain facts and the master, after hearing, made additional findings of fact and granted and denied requests of the parties for such findings. The parties' requests for rulings of law were not passed upon by the master and were reserved and transferred to this court by the presiding justice without ruling thereon. The defendants contend that the relief sought by the plaintiff is more in the nature of that given under a writ of mandamus and should be denied in this proceeding. Since the parties are in court seeking a determination of the questions presented no consideration need be given to the propriety of the form in which the proceedings have been brought. *Lisbon School District v. District,* 96 N.H. 290, 292, 75 A.2d 409, 410 (1950).

The dispute arises out of a disagreement between the convention and the board of commissioners as to the location of a new county courthouse. The parties are in agreement, however, as to their respective powers pertaining thereto. The choice of the site and the erection of the building are within the authority of the commissioners. *Fortier v. Grafton County,* 112 N.H. 208, 292 A.2d 853 (1972); *Brown v. Reding,* 50 N.H. 336 (1870); RSA 28:7. When, as in this case,

the cost exceeds $1,000.00, the new courthouse project must be authorized by the convention and the money needed must be raised and appropriated by it. RSA 24:13; *see Daniels v. Hanson,* 115 N.H. 445, 343 A.2d 644 (1975).

The major areas of contention, and the main issues presented are: (1) was there a vote of the board of county commissioners selecting Fuller Park as the site for the new county courthouse; (2) can such a vote be proved by extrinsic evidence if it does not appear in the written minutes of the board meetings; and (3) are the commissioners collaterally estopped and precluded from raising the issue of site selection by an alleged determination in the case of *Cheshire v. Keene,* 114 N.H. 56, 58, 314 A.2d 639, 640-41 (1974), that the record supported the position of the county in that proceeding that the commissioners did select the Fuller Park site as the location for the courthouse.

The master made the following findings which we hold were warranted by the record. On July 18, 1969, the then county commissioners, Savage chairman, Barker clerk, and Pierce, recommended to the county delegation that the courthouse be located at the Fuller Park site. There is no record in the official minutes of the commissioners that a vote was taken by the three commissioners. In the printed report of the commissioners for the year ending December 31, 1969, it is stated that: "After completing studies of the various locations, the Commissioners unanimously voted to recommend the Washington Street Location [Fuller Park]." The chairman prepared the report; he did not show it to the other commissioners, nor did they read it before the report was printed, or vote to adopt it. However, the various commissioners read the printed report and did not quarrel with its content.

On or about June 15, 1972, there was a meeting between the executive committee of the county delegation and the county commissioners, then Savage, Barrett and Ballam. Only Commissioners Savage and Barrett attended the meeting. As a result thereof a letter was written by Savage, chairman of the commissioners, to the county attorney. It sought his opinion as to a suggested procedure to be followed by the delegation and the commissioners in building the new courthouse. This included the naming of a building committee from among the members of the delegation to advise the commissioners in the planning and the obtaining of architectural plans, which, if approved by the delegation, were to be sent out to bid.

On June 19, 1972, the county convention met. Its minutes state

that all the county commissioners were present and that an opinion of the county attorney was read setting out the authority of the convention and that of the commissioners in their joint venture of building the new courthouse. Votes were taken on different locations for the courthouse, which failed to be adopted. The convention did approve, however, a warrant article authorizing the borrowing of an amount not to exceed $1,494,900 to construct and equip a courthouse to provide facilities for the superior court at the Armory site (Fuller Park) and to remodel the present courthouse for other county departments. The convention also announced the appointment of a building committee to work with the commissioners on this project.

This building committee, consisting of five members of the convention and the three commissioners, met frequently thereafter for the purpose of selecting an architect to draw up plans for the new courthouse at the Fuller Park site. On September 13, 1972, the commissioners entered into a contract with an architectural firm to prepare plans for construction of a courthouse on that site. The contract was signed by all three commissioners, Savage, Barrett and Ballam. For a period of time, the work of the architects was halted upon request of the commissioners. However, work was reinstituted and a final set of plans and cost estimates were received by the three commissioners. These were presented by the commissioners to the county convention and were approved. During the years 1973 and 1974, proposals of other sites were made and explored. However, at a meeting of the convention on April 17, 1974, it was voted to move the courthouse project to bid and completion. The commissioners have refused to do so.

Commissioner Barrett, who has served as a commissioner since February 1970, testified that he never voted for the Armory (Fuller Park) site but felt that during the years 1970-72 the commissioners were two-to-one in favor of that site. Commissoner Savage who has served as commissioner from 1967 to the present testified that action selecting the Fuller Park site was taken by the commissioners prior to July 1969 and was a unanimous decision. The master found that the commissioners were unanimous in their selection of the Fuller Park site until February 1970 when Commissioner Barrett was appointed. He found further that Barrett was aware of the prior approval by the prior commissioners of the Fuller Park site.

The commissioners maintained throughout the hearing before the master that the only admissible evidence that they had selected

the Fuller Park site must be a vote to that effect recorded in the official minutes of the meetings of the board. Consequently they objected to the admission of oral or other extrinsic evidence on the issue. The defendants rely on *Sawyer v. Railrod,* 62 N.H. 135, 153 (1882), which holds that the record made by the clerk of a vote in an open town meeting is conclusive of the facts therein stated "so long as it stands as the record." In that case evidence was offered to contradict the terms of a vote taken and recorded in the minutes of the meeting. In accordance with generally accepted law, the court held that oral evidence could not be introduced to contradict or modify the vote as recorded in the minutes. *Cornellier v. Hinsdale Raceway,* 109 N.H. 220, 248 A.2d 91 (1968).

If, however, there is an entire absence of a record of a certain vote on an issue or transaction, it is accepted law that parol or extrinsic evidence is admissible to establish that a vote was taken and its terms. This applies to the corporate records of private corporations and of public bodies such as municipalities and counties. *Manley v. Northumberland County,* 32 F. Supp. 775, 779 (M.D. Pa. 1940); *Koepplin v. Pfister Hybrid Co.,* 179 Neb. 423, 138 N.W.2d 637 (1965); *James v. Stonycreek Township,* 320 Pa. 363, 182 A. 254 (1936); 9 W. Fletcher, Corporations §§ 4612, 4659 (ed. rev. 1964); 5 E. McQuillin, Municipal Corporations § 14.08 (3d ed. rev. 1969); 20 C.J.S. *Counties* § 91c (1940, Supp. 1975).

We hold that, on the testimony and other evidence that the commissioners selected by unanimous vote the Fuller Park site, that on the evidence of the various actions taken by the commissioners with regard to that site after June 19, 1972, when the convention authorized the funds for a new courthouse at Fuller Park, the master properly found that the commissioners voted to select the Fuller Park site even though such action was not recorded in the official minutes of their meetings. In view of this holding it is unnecessary to pass on the issue of whether the defendants were collaterally estopped and precluded from raising the site issue because it was considered and decided adversely to their present position in *Cheshire v. Keene,* 114 N.H. 56, 314 A.2d 639 (1974).

The findings of the master show that all the procedures pertaining to the construction of the courthouse at Fuller Park agreed upon by the convention and the commissioners, the two county agencies involved, were accomplished except for the final step. This was that upon the approval of the final plans by the convention they were to "be put out for competitive bid." The commissioners were to accept

the winning bid and sign the contract. The commissioners refused to seek bids. By selecting the site and acquiring final plans for the building, the commissioners had thus exercised the discretionary authority granted them by RSA 28:7. The convention, by approving the plans and voting the funds needed, exercised the authority which it is given by RSA 24:13.

The appropriation voted by the convention, a plaintiff in this case, did not make any allocation between the project of constructing a new courthouse and that of remodeling the old building. Nor did it set an order of priorities or require that both be accomplished simultaneously. As a matter of practicality, it can be assumed that the intent was to erect the new courthouse and upon the vacating of the old building by the court, the renovations thereto were to be made. In instituting this proceeding, the convention has impliedly represented that it will make the necessary funds available.

Among the plaintiff's requests for rulings of law transferred to this court without ruling were the following: "1. That the Court find as a matter of law that the County Commissioners and the County Convention entered into an agreement relating to the construction of a new County Court House; that by virtue of said agreement, the County Commissioners are obligated to put the plans out to bid and to sign and execute any bonds that may be approved by the County Convention to finance said Court House construction. 2. That the County Commissioners be ordered to immediately place the courthouse plans to bid. 3. That the Commissioners be ordered to sign and execute the bonds issued to finance said Court House construction." *See* RSA 28:23; RSA 33:10. We hold that the findings of fact properly made by the master warrant the granting of these requests for rulings. In view of the particular circumstances under which this case has been transferred, we grant the requests and enter a decree in accordance with their terms.

*So ordered.*

All concurred.