Grafton, }
Dec., 1896. }

## BROWN *v.* GRAFTON COUNTY.

A county is not liable for expenses incurred by the superintendent of its farm and house of correction in an investigation of charges against him by a committee of the county convention, and is not made liable by a vote of the convention instructing the commissioners to reimburse him therefor.

SUBMISSION, under P. S., *c.* 27, *s.* 13. Facts agreed. The plaintiff was one of the county commissioners and the superin-. tendent of the county farm from 1884 to 1888. In 1889, several articles, supposed to have been written by one George, appeared in the "Boston Herald," charging the plaintiff with misman-agement of the county almshouse and ill-treatment of the in-mates. At the session of the legislature in 1891, the county convention appointed a committee to investigate the charges. The committee subsequently reported in substance that they met at a time and place appointed for a hearing, of which notice by publication had been given; that Mr. George and the counsel of the "Boston Herald" stated that they had no charges to make nor witnesses to present; and that, no other charges being made, they had decided that their duties were ended. By a vote of the convention the commissioners were instructed to settle with Mr. Brown for expenses incurred in the investigation. The plaintiff now claims reimbursement for such expenses; and the question of the county's liability is submitted to the court.

*Plaintiff, pro se.*

*County Commissioners,* for the county.

CHASE, J. The province of New Hampshire was first divided into counties by an act passed in 1769, and allowed by the king March 19, 1771. Prov. Laws, *ed.* 1771, *p.* 204. The object of the division, as stated in the preamble of the act, was to bring courts nearer to inhabitants who resided so far from Portsmouth (where, or at Exeter, all courts had previously been held) that the administration of justice in respect to them was expensive and difficult, and in some cases almost impracticable. The duty assigned to counties was to provide suitable buildings for the accommodation of courts and the means for defraying court ex-penses. The court of general sessions of the peace was author-ized to examine and allow claims against the county, and to make orders for raising and apportioning among the towns the money required for county uses. It transacted the entire county business, including the granting of taxes. *Ib., s.* 4; Laws, *ed.*

1792, *p.* 137. This court was abolished in 1794, and its powers in respect to county affairs, except the power to grant taxes, were vested in the court of common pleas. The power to grant taxes was given to the representatives to the general court from the towns of the county assembled in convention. Laws, *ed.* 1805, *pp.* 68, 70; Laws, *ed.* 1815, *pp.* 84, 87. This was the origin of county conventions. The affairs of counties continued to be managed in this way, substantially, until 1855. R. S., *cc.* 19, 23. In the meantime (in 1809) their burden was increased by transferring to them from the state the duty of relieving certain paupers. Laws, *ed.* 1792, *p.* 302; Laws, *ed.* 1815, *p.* 359; Laws, *ed.* 1830, *p.* 305.

By the act of 1855, remodeling the judiciary, the office of county commissioners was created and "all the power and authority in relation to the financial affairs and the management and control of the property of the county and the disposal and support of county paupers which the court of common pleas" then possessed were granted to these officers. Laws 1855, *c.* 1659, *s.* 37. In 1863 their power to purchase real estate for the county and to enlarge, repair, and erect buildings was limited by a provision that they should not expend for such purposes more than one thousand dollars without authority from the county convention, and their power to sell and convey real estate without such authority was taken away. Laws 1863, *c.* 2735. The law on this subject has thus been developed into its present form. The affairs of these corporate bodies (P. S., *c.* 24, *s.* 1), so far as they relate to the questions under consideration, are now managed by two sets of officers,— the county convention and the county commissioners. The former have "power to raise county taxes, and to authorize the purchase of real estate for the use of the county, the sale and conveyance of its real estate, the erection, enlargement, or repair of its buildings exceeding an expense of one thousand dollars, and the issuing of bonds for its debts." P. S., *c.* 24, *s.* 4; *Petition of Edgerly,* 50 N. H. 416. The latter have the custody and care of all county property; may purchase personal property for the use of the county, its courts, and officers, and may sell such portions of the same as are not needed; may repair, enlarge, or erect county buildings at a cost not exceeding one thousand dollars; have the charge and care of county paupers, and are required to provide for their support upon the county farm or elsewhere; may appoint a superintendent for the county farm and house of correction and such other officers, agents, and servants as may be required for the care of the same and their inmates; may establish rules and regulations for the government of the county farm and house of correction, subject to certain limitations; are required to audit all claims against, or in favor of, the county (except those which the court or the justices thereof are authorized to allow), and to prosecute or defend all actions to which the

county is a party. With the authority of the county convention, they may purchase or sell real estate for the county, may repair, enlarge, or erect county buildings at an expense exceeding one thousand dollars, and may issue county bonds.   P. S., *c.* 27, *ss.* 3, 4, 5, 6, 7, 10, 13, 14, 15.   They are also required to send to the secretary of state prior to the second Wednesday of each biennial session of the legislature, for the use of the county convention, a statement of the condition of the county treasury on the thirty-first day of the preceding December, accompanied by a recommendation of the sums necessary to be raised in each of the two years next ensuing, stating the objects for which the money is required.   P. S., *c.* 24, *s.* 6.

This review of the legislation shows that the county convention had no power to bind the county by the instruction given to the commissioners to settle with the plaintiff for the expenses incurred in the investigation of the charges against him.   The county commissioners were the sole agents of the county to settle such claims, and their authority was not subject to control by the county convention.   *Brown* v. *Reding*, 50 N. H. 336.

It is equally clear that the investigation itself was without authority of law.   The county convention is not the legislature or a component part of it, but a distinct and independent body, whose authorized functions do not include legislation.   It had no authority to make an investigation with a view of discovering and curing defects in the existing law.   Const., *arts.* 21, 22; Cool. Con. Lim. 135; *Burnham* v. *Morrissey*, 14 Gray 226; *People* v. *Keeler*, 99 N. Y. 464.   Neither had it any authority over the plaintiff in his capacity either as county commissioner or as superintendent of the almshouse.   It did not appoint him to, and could not remove him from either office.   The duty of inquiring whether he had violated the law belonged to a different tribunal.   The convention had no power to compel persons to give testimony before it or its committee (*Whitcomb's Case*, 120 Mass. 118), and so was incapable of discovering the truth. Its action could in no event be of any benefit to the county.

If the acts complained of were those of a servant or agent of the county for which it was in some measure responsible, and the defence of which, when attacked in a legal proceeding against the servant or agent, it had power to assume or ratify (*Pike* v. *Middleton*, 12 N. H. 278; *Wadsworth* v. *Henniker*, 35 N. H. 189; *Gove* v. *Epping*, 41 N. H. 539; *Merrill* v. *Plainfield*, 45 N. H. 126; *Gates* v. *Hancock*, 45 N. H. 528; Cool. Con. Lim. 258), it had no occasion to defend its acts or those of its servant before a tribunal having no duty or power in the premises.

There is no consideration, moral or otherwise, upon which to rest a promise of the county to pay the plaintiff's claim, and it is disallowed.   *Hackett* v. *Rockingham County*, 52 N. H. 617.

*Case discharged.*

All concurred.