Rockingham, }
Feb. 6, 1923. }

JEREMIAH O'BRIEN v. COUNTY OF ROCKINGHAM & a.

No action lies against a county for an injury received by a convict while working upon a county building and caused by unsafe staging negligently provided by the county commissioners, who directed him to work thereon.

CASE, for negligence. The plaintiff while confined in the Rockingham county workhouse was put to work by one of the commissioners on a hospital the county was building, and was seriously injured by the negligence of the county and the commissioners in providing an unsafe staging.

The defendant's motion for a directed verdict was granted subject to the plaintiff's exception. Transferred by *Young*, J., from the April term, 1922, of the superior court.

*Bartlett & Mitchell*, for the plaintiff.

*Jere R. Waldron, solicitor*, for the county.

PARSONS, C. J. "Each county is a body corporate for the purpose of suing and being sued." P. S., c. 24, s. 1. But, as said in *Eastman* v. *Meredith*, 36 N. H. 284, 289, of the similar statutory declaration as to towns (R. S., c. 31, s. 1; P. S., c. 40, s. 1), "declaring them to be corporations can not confer upon them other powers or subject them to other duties than those which are conferred and imposed either by express provision of some statute, or are implied from the general character and design of such public corporations." *Markey* v. *County*, 154 N. Y. 675, 679.

"'It is an established principle of jurisprudence in all civilized nations that the sovereign cannot be sued in its own courts, or in any other, without its consent and permission; but it may, if it thinks proper, waive this privilege and permit itself to be made a defendant in a suit by individuals, or by another State.' *Beers* v. *Arkansas*, 20 How. 527, 529. . . . In its own courts it [a state] cannot be made an involuntary defendant. It is not constitutionally bound to give to its school-teachers, to those who support its paupers, lend it money, sell it real or personal property, or make and repair its roads and buildings, . . . or to any class of contractors, creditors, or claimants, a right of action, civil or criminal, against itself." *Wooster* v. *Plymouth*, 62 N. H. 193, 204, 205; *Doolittle* v. *Walpole*, 67 N. H. 554.

If this were a suit against the state for injury through the warden's lack of care by a convict in the state prison or by one, not a convict, employed to make repairs there, the fact that no statute authorizes such a suit would be all the answer required.

"The doctrine, that the purpose of the creation of municipal corporations by the state is to exercise a part of its powers of government, is universally recognized. *Hill* v. *Boston*, 122 Mass. 344, 380. . . . Counties are subdivisions of the state, in which some of the powers of the state government are exercised by local functionaries for local purposes. *State* v. *St. Louis*, 34 Mo. 546, 570, 571. Counties are nothing more than certain portions of territory into which the state is divided for the more convenient exercise of the powers of government. They form together one political body in which the sovereignty resides. *Maryland* v. *B. & O. R. R. Co.*, 3 How. 534, 550." *Wooster* v. *Plymouth, supra*, 208.

Counties generally differ from incorporated towns or cities in the extent of the corporate powers bestowed upon them. They have been called *quasi* corporations. Their powers are generally purely governmental and, exercising only sovereign power, they are, in the absence of a statute imposing liability, generally held not liable to persons injured by their neglect of duty. Dill. Mun. Corp. (2d. *ed.*), Vol. I, *c.* 2, *s.* 10a, *p.* 97; *Ib.*, Vol. II, *s.* 762, *pp.* 871, 872; 15 C. J., *pp.* 388–390, *ss.* 1, 2; *Ib.*, *ss.* 272, 274, *pp.* 568, 570; 7 R. C. L., *pp.* 923–926, *ss.* 2–5; *Ib.*, *pp.* 954–958, *ss.* 29–31.

Counties were here first created by the provincial act of April 29, 1769, 3 N. H. Laws (Batch), *p.* 524. The occasion for the act which divided the province into five counties was the fact as stated in the preamble to the act that the holding of sessions of the superior court of judicature solely at Portsmouth or Exeter had "rendered the Administration of Justice very expensive & Difficult & in Some Cases almost Impracticable, the People being Generally not of Sufficient ability to Travel far." To remedy this evil the act after defining the geographical boundaries of the counties provided for sessions of the courts in each and placed upon the counties the duty of "Building Inspecting & repairing all Prisons Court-houses and other Necessary Public Edifices within their respective Counties." The execution of these powers and the assessment of taxes to provide the requisite money therefor was placed with the court of general sessions of the peace. When this court was abolished in 1794 its powers except as to the assessment of taxes were transferred to the court of common pleas. The power to grant taxes was given

to the representatives to the general court from the towns in the county, thereby constituting the county convention, the duties of the counties being in the meantime increased by placing upon them the support of certain paupers.

In 1855 the office of county commissioner was created and "all the power and authority in relation to the financial affairs and the management and control of the property of the county and the disposal and support of county paupers, which the court of common pleas" then had, was granted these officers. Laws 1855, *c.* 1659, *s.* 37. So far as the present question is concerned the powers of the counties are confided to these two bodies: the county convention and the county commissioners. The former have power to "raise county taxes, and to authorize the purchase of real estate for the use of the county, the sale and conveyance of its real estate, the erection, enlargement, or repair of its buildings exceeding an expense of one thousand dollars, and the issuing of bonds for its debts," P. S., *c.* 24, *s.* 4, while the commissioners have the general management and control of the financial affairs of the county and the management and control of its property except as limited by the powers conferred on the county convention. P. S., *c.* 27, *ss.* 3, 4, 5, 6, 7, 10, 13, 14, 15; *Brown* v. *Grafton County*, 69 N. H. 130. The county convention in the absence of special legislative authority has no power to appoint a committee to act with the county commissioners in the performance of duties committed to them. *Brown* v. *Reding*, 50 N. H. 336; *Hackett* v. *Rockingham County*, 52 N. H. 617. The result of this legislation is a division of the state for the administration of justice, the restraint of minor criminals and the relief of paupers.

The administration of these sovereign powers into five (now ten) geographical divisions instead of one did not make the acts of administration, restraint or relief any the less acts of sovereignty. No ground appears for ascribing private corporate powers to counties. Their powers and duties are purely governmental. The county commissioners performing duties originally considered so nearly of a judicial nature as to be imposed upon a court are with equal clearness public officers and not servants or agents of the counties.

As the counties are merely geographical divisions of the state for the convenient exercise of sovereign power, each for that purpose represents the state and is the state, and is not suable for default in the exercise thereof in the absence of a statute permitting such suit. *Wooster* v. *Plymouth, supra,* 204, 205, 221.

No decision of this court has been cited or found as to the liability

of a county for negligence of itself or its officers. Numerous cases in other jurisdictions denying liability are noted in the citations from Corpus Juris and Ruling Case Law, *supra*. Upon the question of the similar liability of towns as municipal corporations our cases are numerous. "Non-liability has not been put upon the same ground in all cases; nor have the cases in which a liability was found to exist all depended upon a common rule." *Rhobidas* v. *Concord*, 70 N. H. 90, 111. But the cases all agree in holding that a municipal corporation is not liable in an action of tort to a person injured by its negligence in the performance of a public governmental duty imposed upon it by statute or by the negligence of persons nominally its officers while acting not as servants or agents of the municipality but as independent officers. *Creier* v. *Fitzwilliam*, 76 N. H. 382; *Gates* v. *Milan*, 76 N. H. 135; *Wheeler* v. *Gilsum*, 73 N. H. 429; *Connor* v. *Manchester*, 73 N. H. 233; *Lockwood* v. *Dover*, 73 N. H. 209; *O'Brien* v. *Derry*, 73 N. H. 198; *Hall* v. *Concord*, 71 N. H. 367; *Rhobidas* v. *Concord*, 70 N. H. 90; *Gross* v. *Portsmouth*, 68 N. H. 266; *Doolittle* v. *Walpole*, 67 N. H. 554; *Sargent* v. *Gilford*, 66 N. H. 543; *Wakefield* v. *Newport*, 62 N. H. 624; *Clark* v. *Manchester*, 62 N. H. 577; *Edgerly* v. *Concord*, 62 N. H. 8; *Eastman* v. *Meredith*, 36 N. H. 284.

In one of the above cases, *Doolittle* v. *Walpole*, *supra*, the plaintiff claimed damages against the town for injury received from the unsuitable condition of the town "lockup" in which he was confined. In *Gates* v. *Milan*, *supra*, the plaintiff's claim was rested upon injury received by one employed by the town in building a highway. The adverse conclusion in each of these cases upon the ground that a town is not suable for negligent injury occasioned when the town was acting in a public governmental capacity is decisive of the plaintiff's rights here whether he stands as a convict or as a private laborer.

There is a line of cases in which without special authority therefor actions have been permitted to be maintained against a town for "an injury to private property rights by an abuse of its possessory right in the highway — permitting an unreasonable use of the land to the injury of another." *Wheeler* v. *Gilsum*, *supra; Clair* v. *Manchester*, 72 N. H. 231; *Flanders* v. *Franklin*, 70 N. H. 168; *Gilman* v. *Laconia*, 55 N. H. 130. These cases are placed upon the liability of a landowner for the maintenance of a nuisance on his own land to the injury of his neighbor. *Burnham* v. *Windham*, 77 N. H. 103. It is suggested in support of these cases that they are

maintainable because brought to redress an injury to a private right and are therefore distinguishable from the cases like *Eastman* v. *Meredith, supra,* where the plaintiff depends upon his public right as a voter or his like right as a traveler, as in *Sargent* v. *Gilford, supra.*

If the plaintiff's right as a convict was a public right, the plaintiff contends it was superseded when he was accepted on the work as a laborer by his private right to reasonable conduct from those with whom he came in contact and he argues that he has equal right to recover for an invasion of his private right of safety as for an invasion of his private right of property by one engaged in the performance of a public imposed duty. *Rhobidas* v. *Concord, supra, pp.* 114–116. Assuming that the invasion of a private right in all cases affords a cause of action, the proposition is unanswerable. But the contention, like another suggestion in support of the nuisance suits, that otherwise private property might be taken without compensation, proves too much. If sound to that extent it establishes the liability of the state itself to direct action for tortious acts of all kinds. But the state can no more be sued for injuries caused by its own negligence or that of its servants or agents or for the results of a nuisance maintained on its land than it can be for a breach of its promise to pay for service rendered or money loaned.

What is said in *Rhobidas* v. *Concord, supra,* rests upon the proposition that the municipalities then under consideration possessed a twofold character "in part governmental and sovereign, and in part individual and accountable," a proposition which it is said "is too firmly imbedded in the common law to be removed, except by the law-making power." The conclusion in *Rhobidas* v. *Concord, supra,* is not that a private personal injury renders the negligent exerciser of sovereign power accountable, but merely that such action is enforceable against a corporation "individual and accountable" as well as sovereign. The fact that the right relied on is public rather than private is an evidentiary fact which as well as those specifically mentioned in *Gates* v. *Milan, supra,* 139, 140, may be important as evidence of legislative intention.

It may be that the two lines of cases, one holding towns liable for negligent invasion of an adjoining owner's property rights by their use of land which they hold only for public, governmental purposes, as the soil of highways, and those holding them not liable for negligent invasion of private personal rights while acting in a public, governmental capacity, are not logically reconcilable and that to

bring the law to a state of logical uniformity, it would be necessary either to overrule the cases depending upon *Gilman* v. *Laconia*, 55 N. H. 130, or those of which *Gates* v. *Milan* is the latest adjudication. But the two rules are too firmly settled by repeated judicial decision to be changed except by legislative action. *Rhobidas* v. *Concord, supra, p.* 114.

The present case may perhaps as it now stands be disposed of without reference to this apparent conflict in the decisions. That the county or any other municipal organization is not liable for default of persons nominally its officers who are acting as public officers and not as its servants or agents is a proposition which is beyond dispute. Although the case states the insufficient staging was due to the negligence of the county, the evidence upon which the finding is made is not reported. In the absence of information as to the facts and rules of law upon which the staging was found unsafe through the negligence of the county, the conclusion may properly be disregarded. The county could have had nothing to do with the erection of the buildings. The county convention could authorize their erection but the building could be erected only by the commissioners. P. S., c. 24, s. 4; *Ib.*, c. 27, ss. 4, 5; *Hackett* v. *Rockingham County, supra,* 617; *Brown* v. *Reding, supra,* 336. As the county had no authority to erect the building, it is not liable for an insufficient staging used in its erection.

By the original province act of 1769; 3 N. H. Laws (Batch. *ed.*), *p.* 528, and by the act regulating prisons, Feb. 10, 1791; Laws N. H. 1792, *p.* 135; 5 N. H. Laws (Batch. *ed.*), *p.* 658, counties were made liable for debt or damages in case of the escape of any debtor through the insufficiency of the prison. No statute creating liability for other default in the performance of the duties imposed has been found.

The case is entitled as against the county and others. The only question which has been presented in argument is the liability of the county. Whether the claim if well founded could be prosecuted by suit has not been considered. P. S., c. 27, ss. 10, 13; *Day* v. *Coös County,* 77 N. H. 532.

*Exception overruled.*

Young, J., did not sit: the others concurred.