Cheshire,
No. 5306.

HINSDALE & *a.*

*v.*

CHESHIRE COUNTY & *a.*

Argued March 3, 1965.
Decided June 30, 1965.

*McLane, Carleton, Graf, Greene & Brown* and *Charles A. De-Grandpre* (*Mr. DeGrandpre* orally), for the plaintiffs.

*Upton, Sanders & Upton* and *Edward J. O'Brien*, county attorney (*Mr. Richard F. Upton* orally), for the defendants.

LAMPRON, J. The broad issue presented is whether the county of Cheshire can collect Hinsdale's share of the county tax appropriated for Southwestern.

May 3, 1953, the great majority of the towns in the southwestern corner of New Hampshire formed an unincorporated association for the rendering of mutual fire aid to each other without charge as provided in RSA 154:24-29. They included primarily municipalities in Cheshire county with also some towns outside of that county. This association purchased a radio communications system for the use of its members. It was paid for by a $2,500 appropriation by Cheshire county supplemented by an equal sum from Federal Civil Defense funds.

Effective October 1, 1957, Laws 1957, 277:1, now RSA 154:30-a, provided that "whenever ten or more municipalities within the state shall have voted to authorize their respective fire departments to render outside aid as provided in [RSA 154:24-29] they may, if they so desire, form a district fire mutual aid system, which shall be a public municipal corporation. They may petition the state fire marshall in writing to call the organization meeting of the system."

Dated October 2, 1957, a petition to form a district fire mutual aid system signed by thirty-three chiefs of fire departments of municipalities in that section of the state was filed with the State Fire Marshal. As a result the Marshal called an organization meeting which was held on March 10, 1958. The parties agree that at this meeting "certain fire chiefs of certain towns voted to adopt Articles of Association and By-Laws of Southwestern New Hampshire District Fire Mutual Aid. System (hereinafter referred to as Southwestern). The Articles were approved by the Attorney General and recorded in the Secretary of State's Office April 10, 1958."

"None of the towns, whose fire chiefs participated in the above described meeting [with the possible exception of Keene], expressly authorized such participation and action thereat by town meeting vote." However, it is agreed that, after the institution of the present action, the great majority of these towns passed a vote

to "ratify, approve and confirm the action" of their fire departments in joining their town to Southwestern in 1958 and in agreeing that their department may give and receive outside fire aid as provided in RSA ch. 154. Hinsdale never voted prior to April 10, 1958, to authorize its fire department to render outside aid nor did it pass the above vote. "Whether the other towns in Southwestern did so vote prior to April 10, 1958, has not been determined."

In 1962, the county delegation of Cheshire, by a two-third majority vote as required by RSA 154:30-f, appropriated $11,500 for Southwestern. The sum of $209 thereof was for the purchase of a "tone system" used solely for Cheshire members in 1962 and also by two Hillsborough county towns in 1963 on payment of a special assessment. The balance was for the annual operational budget of a dispatch center built by the city of Keene without charge to Southwestern and occupied and used free by it. The expenditures were for the salaries of the personnel operating the dispatch center, maintenance, supplies and utilities.

Hinsdale's refusal to pay $500, its share of the above appropriation of $11,500 is based firstly on the contention that Southwestern is not a duly constituted municipal corporation under RSA 154:30-a — 30-g. It advances the following reasons for this position: (1) Ten or more municipalities within the state have not voted to authorize their respective fire departments to render "outside aid" as required for the formation of a district fire mutual aid system under section 30-a. (2) The petition to call an organization meeting signed by the required number of municipalities within New Hampshire was also signed by fire chiefs representing municipalities outside the state. (3) Article VIII-A of the by-laws adopted at Southwestern's organization permits nonresident fire departments in Vermont and Massachusetts on the western border of our state to be associated with Southwestern "in the development and execution of plans for coordination of fire fighting · services, on such terms as may be mutually agreed upon" with the privilege to have delegates attend meetings "without vote." (4) As a ·result these nonresident associate members receive help and aid through ·the use of the Southwestern system the operation of which is paid for by Cheshire county.

The petition required by RSA 154:30-a, filed with the Secretary of State as part of the articles of association of Southwestern, was signed by the fire chiefs of thirty-three municipalities in this

state including Hinsdale. There appeared above their signatures the following: "The undersigned municipalities within the State of New Hampshire [have] authorized their respective fire departments to render outside assistance as provided in RSA 154." The record of Southwestern's organization, including the articles of association and by-laws, was approved by the office of the Attorney General. See RSA 294:14. There is no specific prohibition in the statute against out-of-state associate membership. On the contrary the power and duty of such mutual aid systems to establish an over-all plan to "coordinate the services of all fire departments belonging to it so as to provide better and more efficient cooperation in the protection of life and property against fire within the area" could well include arrangements with adjoining out-of-state municipalities under appropriate terms and conditions. RSA 154:30-c.

Furthermore Southwestern has been operating as "a public municipal corporation," (RSA 154:30-a) since 1958. Hinsdale has paid annually out of its general fire department operation the dues of $6 assessed against its members by Southwestern. Hinsdale's fire department radio system has been operating on Southwestern's wave length "notifying the Southwestern dispatch center of all fires, dispatch and return of their equipment. During several fires in Hinsdale, Southwestern has, on request of Hinsdale Fire Department, sent in outside equipment to give aid. Hinsdale has on a number of occasions sent its equipment out of town to give aid to others on request of the Southwestern dispatch center."

We need not decide in this proceeding whether, because of its proceedings to incorporate under existing statutory authority as a public municipal corporation and of its operation as such a corporation for a number of years, Southwestern is a *de jure* or a *de facto* corporation. This is a matter which can only be determined in a direct proceeding attacking its corporate existence brought by the State of New Hampshire. To permit a collateral attack, such as this one, would produce endless confusion and hardship and seriously jeopardize corporate existence. *Larned* v. *Beal*, 65 N. H. 184; *Wright* v. *Phelps*, 89 Vt. 107, 110; 18 Am. Jur. 2d, Corporations, *ss.* 61, 62; 1 McQuillin, Municipal Corporations (3d *ed.*) *ss.* 3.48, 3.49.

Hinsdale contends next that an interpretation of RSA 154:30-f to allow Cheshire county to tax for the support of Southwestern, a system comprised of towns both within and without the county,

is inconsistent with RSA 24:13 restricting a county's taxing and appropriating powers to county uses.

RSA 154:30-f reads as follows: "APPROPRIATIONS. Municipalities belonging to such a system may raise and appropriate money for the purpose of the system. Counties in which a system is established may raise and appropriate money for the purposes of the system; provided however that where all the municipalities in the county do not belong to the system, such county appropriations may only be made by the affirmative vote of two-thirds majority of the county convention present and voting."

Although, as pointed out by Hinsdale, Senate Bill No. 115 was introduced to provide a fire mutual aid system composed of municipalities within a county, its final enactment provides for a system of municipalities within the state (RSA 154:30-a, 30-d) and must be interpreted in that light. It is clear from the language of *s*. 30-f that if a system was composed of Cheshire county municipalities only but did not include all of them, the county could raise money for the system within RSA 24:13 regulating county appropriations. This would be warranted on the ground that the whole county is benefited by the existence and operation of the system. *Velishka* v. *Nashua*, 99 N. H. 161; *State* v. *4.7 Acres of Land*, 95 N. H. 291, 295.

It is agreed that out of the appropriation of $11,500 made by Cheshire county in the year 1962, $209 was used to purchase tone equipment, used by Cheshire towns only in that year. In 1963 Bennington and Hancock in Hillsborough county used it upon payment of special assessments of $145.68 and $216.48 which were used to reimburse Cheshire on its appropriation. It is also agreed that the balance of the funds appropriated by Cheshire was used for the annual operational budget of Southwestern's dispatch center which handles all fire calls, alarm systems and dispatching for the city of Keene and the majority of the towns in Cheshire county. It is further agreed that the "24 hour coverage provided at the dispatch center by the Coordinator and three dispatchers and the annual operational budget of Southwestern are no greater than would be required if Southwestern served only the City of Keene and the other member towns in Cheshire County."

The appropriation for Southwestern which would be warranted if the present system were limited to serving Cheshire county towns is not rendered illegal because this same coordinated system with the same appropriation also provides Cheshire county towns

an advantageous exchange of services with municipalities outside the county and the state located in the area benefited by Southwestern's system. RSA 154:24. We hold that under the facts and circumstances the appropriation made by Cheshire county to Southwestern is for the public use and benefit of the residents of the county and is warranted and proper. *Keene* v. *Roxbury*, 81 N. H. 332, 335.

Hinsdale maintains however that if Cheshire taxes it for the benefit and use of Southwestern this results in an unequal sharing of the benefits and burdens of taxation and is unconstitutional. Const., Pt. I, *Art.* 12th, Pt. II, *Art.* 5th. It maintains that it receives no benefits from Southwestern. However it is located in the southwest section of our state where most of its neighbors through Southwestern are part of a 24-hour coordinated system to protect the area from fire by a radio alarm and dispatch system which has cost the participating New Hampshire communities nearly $150,000. Furthermore it is agreed that the Hinsdale fire department has a two-way radio system on each of its three fire trucks and at its fire station which operates on Southwestern's wave length. Its radio system has been used to notify Southwestern dispatch center of all fires, dispatch and return of their equipment. During several fires in Hinsdale, Southwestern has, on request of Hinsdale fire department, sent in outside equipment to give aid.

We hold that Southwestern is benefiting the county of Cheshire and is also benefiting or is available to benefit Hinsdale. Consequently Cheshire can properly raise the moneys to support Southwestern throughout the county. The fact that Cheshire county, in which most of the members of Southwestern are located is the only county which appropriates money to Southwestern does not render the levy unconstitutional. There is no contention that this tax is not levied equally and proportionately on all taxpayers in Cheshire which is the constitutional equality required. *Monadnock School District* v. *Fitzwilliam*, 105 N. H. 487, 496.

The result reached renders unnecessary the consideration of subsidiary questions raised in the transfer.

*Remanded.*

All concurred.