Merrimack
No. 7212

RONALD D. DANIELS, JR.

v.

RICHARD D. HANSON & *a.*

RICHARD STRICKFORD & *a.*

v.

RICHARD D. HANSON & *a.*

July 31, 1975

*Perkins & Brock* and *McSwiney, Jones & Semple (Mr. Harold W. Perkins II* and *Mr. Carroll F. Jones* orally) for the plaintiffs Ronald D. Daniels, Jr., and for Richard Strickford, Charles Denningham and Larry Thomas, intervenors.

*Stebbins & Bradley* and *Daniel J. Connolly (Mr. Connolly* orally) for defendant John Noble.

*Richard A. Hampe,* county attorney, by brief and orally for Albert M. Ayotte, Edna McKenna and Peter Spaulding, county commissioners.

Richard D. Hanson, county treasurer, filed no brief.

LAMPRON, J. Petition by Ronald D. Daniels, Jr., as sheriff of Merrimack County and as a taxpayer, and by intervenors Richard Strickford, Charles Denningham and Larry Thomas, deputy sheriffs, against the county treasurer, now Richard D. Hanson, the county commissioners, now Albert M. Ayotte, Edna McKenna and Peter Spaulding, and the chairman of the county delegation and convention now John H. Noble. By stipulation the county of Merrimack was made a party plaintiff and a party defendant.

Plaintiffs sought a temporary and permanent injunction enjoining the defendants from any action which would change the status of the staff of the county sheriff. An *ex parte* injunction continuing the employment of the intervenors is still in effect. Plaintiffs also asked for a declaratory judgment of the rights of the parties in relation to the county budget and more particularly in regard to certain footnotes contained in the 1974 budget for the office of sheriff. Hearing by *Keller,* C.J., who made certain findings and rulings and transferred to this court without ruling the following question: "Was the action of the Merrimack County Convention, taken on July 1, 1974, in so far as it provides for abolishing two salaried deputy sheriff positions, valid or invalid?" Exceptions of the parties to findings and rulings of the court contained in their respective bills of exceptions were also reserved and transferred.

This litigation concerns the conflict which naturally arises between the appropriating body and the administrative officials who have to perform their mandated functions with the funds made available to them. *See Laconia Bd. of Educ. v. Laconia,* 111 N.H. 389, 285 A.2d 793 (1971); *O'Neil v. Thomson,* 114 N.H. 155, 316 A.2d 168 (1974). In this instance the disagreement is between the county sheriff with some of his deputies and the county convention, mainly over footnotes inserted by the convention in the 1974 budget. All but two of these footnotes are not involved on this appeal as they were withdrawn from contention by agreement of the parties or found to be moot by the trial court. The two footnotes material to this appeal pertain to the budget line item entitled "Salaries — Deputies, dispatchers & clerks" in the amount of $74,230. Footnote "a1" provides for the abolishment of a position of deputy sheriff on October 1, 1974. Footnote "a2" abolishes another position of deputy sheriff on November 5, 1974.

On December 10, 1973, the county convention met and in accordance with the provisions of RSA 23:7 (Supp. 1973) empowering counties to establish salaries and expenses or other compensation for sheriffs and deputy sheriffs, in replacement of the existing system of fees, fixed the following annual salaries effective January 1, 1974: sheriff $18,700.00, two deputy sheriffs $8,750 each, two other deputies $8,250 each, and two more deputies $6,500 each. Moneys were appropriated therefor.

At a meeting of the convention on June 3, 1974, a motion was adopted "that $20,000 be deleted from the criminal investigation funds in the sheriff's department". The trial court found that "[t]he effect of this vote would have been to have abolished three deputy

sheriff positions, being those held by the three intervenors". On July 1, 1974, the convention voted to substitute a new budget for the one adopted on June 3. It appropriated $74,230 for salaries of deputies, dispatchers and clerks. It provided for six salaried deputies but contained the two footnotes "al" and "a2" which ordered the abolishment of two of these positions, one on October 1, 1974, and another November 5, 1974. The plaintiffs maintain that these actions are beyond the powers of the convention as they illegally impinge upon the office of the sheriff. Plaintiffs argue also that these restrictions on appropriations by means of footnotes were unreasonable, capricious and arbitrary, thus invalid.

The office of sheriff "is one of the oldest offices known to the common law system of jurisprudence". 1 W. Anderson, Sheriffs, Coroners, and Constables § 1 (1941). It is said that the office can be traced back to biblical times. *Id.* In this State the sheriff is a constitutional officer. N.H. CONST. pt. II, art. 71. The sheriff maintains his common law powers, duties and responsibilities except insofar as they have been modified by constitutional provisions or legislative enactments. 1 W. Anderson, *supra* § 6.

Although the lineage of the county convention cannot be traced as far back, it also is endowed with antiquity. Its powers to raise taxes and appropriate moneys for county expenses date back to 1794. *O'Brien v. County,* 80 N.H. 522, 523, 120 A. 254, 255 (1923); *see* Laws 1815, *p.* 87. These appropriations "shall be itemized in detail" and the convention may require the county commissioners to report once each quarter the expenditures of the county as compared to the budget voted. RSA 24:14. No moneys are to be paid or liabilities incurred for which no appropriation has been made or in excess of appropriations made. RSA 24:15. Thus the convention is empowered to compel the application of county funds to the purposes for which they were appropriated, unless a transfer is authorized, and to limit expenditures to those necessary for legitimate county purposes. 4 C. Antieau, County Law § 43.10 (1966); *see Hall v. Cook County,* 359 Ill. 528, 540, 195 N.E. 54, 60 (1935).

The trial court found "that there was no change in circumstances between December 10, 1973, and July 1, 1974, such as to warrant the abolishment of two of the salaried deputy sheriff positions established by the Convention on December 10, 1973 . . . . The three intervenors appointed by the sheriff are all well qualified, and they, as well as the Sheriff, have been performing their duties in a commendable manner." The court found further "that if two

of the six salaried deputy sheriff positions are in fact abolished the Sheriff will be unable to perform all of his constitutional, statutory, and common law duties, and he will have to eliminate practically all of the law enforcement support he has been furnishing towns and cities in the County. This support is necessary to the towns and cities, and there are no other agencies in a position to furnish such support to them."

The sheriff's constitutional responsibilities are the following: (1) to deliver to the secretary of state attested copies received from clerks of cities and towns in the county of the results of votes cast for the offices of Governor, Council and senators (N.H. CONST. pt. II, art. 32); and (2) to serve citations of impeachment proceedings in the senate. *Id.* pt. II, art. 38. Sheriff Daniels testified that he has not performed either of these functions since taking office in January 1971. Nor has he ever performed or had occasion to perform the following statutory duties: (1) require agents and dealers in lightning rods to display their licenses (RSA 323:5); (2) adjourn the superior court in the absence of a judge at the beginning of the term (RSA 497:1); (3) accept fines paid in superior court (RSA 618:3); (4) take possession of estates of insolvents at the direction of the judge of probate and notify the creditors (RSA 568:7). Many of his other statutory duties can also be performed by others, such as constables, policemen, and agents of certain departments, who in fact perform them in many instances. These include the duty: (1) to report criminal intelligence to the commissioner of safety (RSA 106-B:14 (Supp. 1973)); (2) to prosecute violations of the alcoholic beverages laws (RSA 182:2); (3) to enforce provisions as to lights on vehicles on the highways (RSA 250:11); and (4) to serve warrants to collect contributions due under the Unemployment Compensation Act (RSA 282:12 (J)).

One of the main duties performed by the sheriff or his deputies is to serve and execute all writs and other precepts directed to him (RSA 104:5). This was at common law, and is today, a most important duty. 1 W. Anderson, Sheriffs, Coroners, and Constables § 6 (1941). Usually the sheriff also has the custody of the jail in his county and of the prisoners. However since the jail in Merrimack is located at the county farm its superintendent has that custody (RSA 619:5, :7).

At common law the sheriff was the chief law enforcement officer of the county. 70 Am. Jur. 2d, *Sheriffs, Police, and Constables* § 21 (1973); 1 W. Anderson, *supra* §§ 6, 42-44; *see In re Ash,* 113 N.H. 583, 587, 311 A.2d 304, 306 (1973). However that is no longer

true today. As communities grew local police departments were created. *See* R.S. ch. 114 (1842). In the larger centers these departments have the manpower, the training and the equipment to perform creditably the ordinary tasks of law enforcement. In the smaller towns there is less personnel, training and equipment. However, by Laws 1971, ch. 497 (now RSA ch. 105-A (Supp. 1973)) the legislature established a police standards and training council which makes available education and training to persons who "seek to become police officers, persons who are serving as such officers in a temporary or probationary capacity, and persons already in regular service." RSA 105-A:1 (Supp. 1973). This council was made a permanent State agency and granted an appropriation to carry out its purposes. Laws 1973, ch. 424.

By Laws 1937, ch. 134 (now RSA ch. 106-B) the legislature created another State law enforcement agency, the division of State police. Its director and employees are directed to cooperate with any other law enforcement agency, both within and without the State, for the purpose of preventing and detecting crime and apprehending criminals, with certain restrictions as to larger municipalities. RSA 106-B:11, :15. The State police officers have general power to enforce all criminal processes and to make arrests in all counties. However, the county officials are to be notified of an arrest in their county and the sheriff and county attorney are to investigate and prosecute. RSA 106-B:15.

This court held in *In re Ash,* 113 N.H. 583, 588, 311 A.2d 304, 307 (1973) that "there is no statutory or common law authority which places the county sheriff in a supervisory position over the local police." The legislature has provided authority for law enforcement personnel of towns and cities to obtain assistance from law enforcement personnel of other towns and cities in addition to obtaining such help from the State police and the sheriff's department. RSA 105:13 (Supp. 1973); RSA ch. 106-C (Supp. 1973). Hence the transferred question: "Was the action of the Merrimack County Convention, taken on July 1, 1974, insofar as it provides for abolishing two salaried deputy sheriff positions, valid or invalid?" must be answered in the light of all the above factors which have altered the common law office of sheriff.

This question was based to a large extent on the finding made by the trial court that if those two positions were abolished the sheriff would have "to eliminate practically all of the law enforcement support he has been furnishing towns and cities in the County." There is no statutory mandate which fixes the amount

of this support. The county convention is the agency endowed with the authority to determine the amount of taxes to be raised for county operations and how these funds will be appropriated. RSA 24:13. It necessarily possesses the power to determine in its discretion how the county moneys are to be allocated among the officials and departments competing for them. RSA 24:14, :15; *Hinsdale v. Cheshire County*, 106 N.H. 330, 211 A.2d 405 (1965); 4 C. Antieau, County Law § 43.10 (1966); *see Morgan County Comm'n v. Powell*, 292 Ala. 300, 293 So. 2d 830, 834 (1974); 56 Am. Jur. 2d *Municipal Corporations, Etc.* § 276 (1971).

In budgeting funds for the operation of the office of sheriff, the convention could properly consider and decide that the county's interest would be better served by decreasing the law enforcement support previously given by the sheriff's department to the towns in the county. This would require these towns to provide more personnel, training and equipment for their own protection. This authority of the convention was recognized by the legislature in RSA 104:3-e (Supp. 1973). This section provides that when the county convention has established the office of deputy sheriff on a salary and expenses basis under RSA 23:7 (Supp. 1973) "the sheriff may appoint such number of deputy sheriffs ... within the limits of the funds that may be appropriated for this purpose." It also provides that the sheriff "may appoint such special deputy sheriffs as he shall from time to time require", their compensation to be on a per diem or fee basis. The sheriff's budget for 1974 totaled $135,256 which in the aggregate was about $2000 less than the previous year. It provided $74,230 for salaried deputies and dispatchers and clerks. It also increased to $3510 the requested sum of $2000 for per diem expenses.

The county convention, however, has no other authority over the actual operation of the sheriff's department. *Brown v. Reding*, 50 N.H. 336 (1870); *Brown v. Grafton County*, 69 N.H. 130, 132, 36 A.874, 875 (1896); *O'Brien v. County*, 80 N.H. 522, 524, 120 A. 254, 255-56 (1923). His duties for the most part are now defined by statutes. That his operations will be affected by the amount of money appropriated by the convention is a necessary consequence of the allocation of county powers to its different branches. Unless the appropriation for the operation of the sheriff's department is arbitrary and capricious or in such an amount as will, for all practical purposes, prevent the sheriff from performing a legally mandated function of his office it cannot be declared

illegal or invalid. *See Laconia Bd. of Educ. v. Laconia,* 111 N.H. 389, 392, 285 A. 2d 793, 795 (1971). On the record in this case we cannot hold that this appropriation made by the county convention for the operation of the office of sheriff for the year 1974 was invalid or illegal. *Fortier v. Grafton County,* 112 N.H. 208, 211, 292 A.2d 853, 855 (1972).

We now consider the 1974 budget footnotes "a1" and "a2" by which the convention "abolished" two salaried positions of deputy sheriff, one effective October 1, 1974, the other November 5, 1974. The county convention does not possess the general legislative powers which our constitution in part II, article 5 has vested in the State legislature. "The county convention is not the legislature or a component part of it, but a distinct and independent body, whose authorized functions do not include legislation." *Brown v. Grafton County,* 69 N.H. 130, 132, 36 A. 874, 876 (1896). Nor has the legislature granted the convention the power which the legislature has to require budgets prepared in a "program appropriation unit" form (PAU). RSA 9:8-a (Supp. 1973). This approach permits appropriations committees to make "legislative judgments" on the costs and other details of programs submitted for funding. *O'Neil v. Thomson,* 114 N.H. 155, 161, 316 A.2d 168, 171 (1974). The legislature can thus pass on the personnel for these programs and eliminate funding for certain positions and abolish them.

The county convention did not possess the authority to abolish certain positions by footnotes. However, the convention was granted by the legislature the authority to fix the amount of funds to be used for salaries and expenses of deputy sheriffs. RSA 104:3-e (Supp. 1973). But the sheriff by virtue of his office has the sole authority to determine who will occupy the deputy sheriff positions funded, and what their functions will be.

In summary the answer to the transferred question is: (1) the county convention cannot order the abolishment of certain salaried deputy sheriff positions as it endeavored to do by the footnotes in question; (2) the convention in the exercise of its discretion can fix the amount of funds to be used for the salary and expenses of deputy sheriffs in the budget of the sheriff's department; (3) if the amount appropriated does not prevent the sheriff from performing his mandated duties the appropriation is valid, and we cannot say it was not valid in this case; and (4) if as a result of the limited funding certain salaried deputy sheriff positions have to be eliminated, the sheriff has the sole authority to determine

what positions will be eliminated in order to operate within the appropriation. Exceptions of the parties which are contrary to this opinion are overruled, those in accord therewith are sustained, and the order is

*Exceptions sustained in part,*
*and overruled in part.*

GRIMES, J., did not sit; the others concurred.