The issue in the instant case can be stated in a simple and direct fashion: can the Randolph County Commission, in the face of a statute authorizing overtime pay for deputy sheriffs, limit the number of overtime hours worked to emergency situations? We conclude that the answer is in the negative.
On May 28, 1981 the Alabama legislature passed Act No. 81-868, which provides in pertinent part:
 "Section 1. Any non-elected law enforcement officer in the service of a county who is assigned to duty for more than eight hours during any one day or for more than forty hours during any calendar week shall be paid time and one-half for such excess hours worked; or he shall be given time and one-half compensatory leave. In all such cases, it shall be at the sole option of the law enforcement officer whether he shall receive overtime pay or compensatory leave.
 "Section 2. Any such law enforcement officer who works overtime during any calendar month shall on the last day of such month file in writing a statement as to his election to accept overtime pay or compensatory leave. In the event such law enforcement officer elects to receive overtime pay, such pay shall be included with his compensation for the next succeeding pay period. If he elects to receive compensatory leave, such leave may be taken at any time during the calendar year in which it is earned, except during times of emergency."
Thereafter, on July 27, 1981, the Randolph County Commission adopted the following resolution:
 "On motion as made by Calvin Shipp that overtime hours for the Sheriff's Deputies for June and July 1981 would be paid, but beginning August 1, 1981 the Sheriff's Office would limit the overtime hours to zero, would establish a working schedule to keep the office covered without having to exceed the 40 hour work week, except in emergency cases where a murder, rape, or other such emergency exists. At that time, the overtime hours would be approved by the commission. On motion as made by Calvin Shipp and duly seconded by Jim T. Willingham, the Chairman placed the motion before the Court for a vote. All members, being present, and voting `Aye,' the Chairman declared the motion carried."
The Randolph County Sheriff, in submitting his budget request for the fiscal year 1981-82, included an amount for overtime. This amount, however, was deleted when the commission adopted the annual budget. After the deputies each worked overtime for the months of September, October, November, and December of 1981 and January, February, and March of 1982 at the sheriff's request, claims were submitted to and denied by the commission. The deputies brought an action in the Randolph County Circuit Court seeking to recover for the overtime hours in question. The court, in an order dated April 23, 1982, awarded the deputies overtime pay for the months worked in 1981-82 but held that the county commission had the authority to limit overtime hours to actual emergencies in the future. The deputies have appealed to this court from that portion of the order which limits their future overtime.
As a general proposition, it is axiomatic that "[a] person claiming fees or costs must point to the definite law authorizing it; the law will not be extended beyond its letter; the law may impose duties upon public officers without providing compensation therefor." Mobile County v. Williams,180 Ala. 639, 61 So. 963 (1913). Courts have also held that a deputy sheriff or other public official is not entitled to claim overtime in the absence of a statute or contract authorizing it. See Rusk v. Whitmire, 91 Nev. 689,541 P.2d 1097 (1975); Donohue v. Police Commissioner, 267 Md. 612,298 A.2d 437 (1973); City of Homestead v. DeWitt, 126 So.2d 582
(Fla.App. 1961).
In the instant case Act No. 81-868 authorizes overtime pay or compensatory leave for deputy sheriffs who work "more than eight hours during any one day or for more than forty hours during any calendar week *Page 895 
. . . ." The deputy sheriffs argue that the language of Act No. 81-868 is mandatory, i.e., any overtime work done by them at the direction of the sheriff must be compensated for either by compensatory time off or in cash. The Randolph County Commission, on the other hand, takes the position that the statute does not mandate that deputy sheriffs must be paid for an unlimited amount of overtime work. Hence, it can disallow overtime pay completely or pay for overtime worked only in certain enumerated emergency type situations.
Statutes dealing with the salaries of public officials are generally held to be mandatory. Navarro County v. Howard,61 Tex. Civ. App. 335, 129 S.W. 857 (1910). We conclude that Act No. 81-868 is mandatory in the sense that a deputy sheriff may now be compensated for overtime work; whereas before he or she could not be so compensated.
We also conclude from the context of Act No. 81-868 that whether a deputy sheriff works overtime is a decision for the sheriff, the chief executive officer of that department of county government. See Daniels v. Hanson, 115 N.H. 445,342 A.2d 644 (1975).
In the instant case not only did the county commission usurp and intrude upon the authority of the sheriff by attempting to say when a deputy sheriff may engage in overtime work and for what purposes, but also it refused to appropriate any money to the sheriff's office for overtime pay for sheriff's deputies as requested by the sheriff in the budget he submitted to the commission. The commission defends its action by citing the Budget Control Act, which, in effect, gives the county governing bodies the authority to review requests for funds from the various county agencies and to appropriate funds for their operation. The Budget Control Act does not give the county commission blanket authority to refuse to pay salaries mandated by the legislature. In Shelby County Commission v.Smith, 372 So.2d 1092 (Ala. 1979), the supreme court said that the Shelby County Commission could not use the Budget Control Act as a shield to ward off its legal responsibilities to pay legally valid claims by simply omitting them from the budget. In the cited case the legislature had provided that the salaries of Shelby County deputy sheriffs would be equal to those paid state troopers. In other words, a definite salary had been specified for Shelby County deputy sheriffs by the legislature and thus the county was required to pay that salary. It had no discretion in the matter. It was required to appropriate funds for the payment of this mandated salary.
In the case at bar the legislature has not ordered the Randolph County Commission to pay a specific amount of money to the deputy sheriffs as was the case in Shelby County Commissionv. Smith, supra. But the legislature has authorized the commission to pay for overtime work by deputy sheriffs when it is performed at the direction of the sheriff. Such pay for overtime work must, however, come from the funds appropriated by the county governing body for the operation of the sheriff's office. For example, an overall amount of money would be appropriated for the operation of the sheriff's office. Such an appropriation would cover such expenses as gasoline, oil, repairs on sheriff's office vehicles, office supplies, equipment purchases, etc. Also included in this overall appropriation would be sums mandated by the legislature to be paid, such as salaries.
In the instant case the Randolph County Commission refused to appropriate any money for the payment of overtime work by deputy sheriffs. The Randolph County Commission cannot, by refusing to appropriate any money for the payment of overtime work, prevent the deputy sheriffs from receiving pay for such work. The legislature has authorized payment for overtime work and it must be paid for out of those discretionary funds appropriated to the sheriff's office. Such discretionary funds include moneys for gasoline, equipment purchases, supplies, etc. This means, of course, that the amount of money that can be paid for overtime work is limited to *Page 896 
the overall appropriation for the entire operation of the sheriff's office. In this posture the sheriff is held to a reasonable exercise of discretion in the amount of overtime work his department will incur, just as he must decide about office expenses, use of gasoline, and the purchase of equipment.
To say that the deputy sheriffs must be paid for all of the overtime that they are directed by the sheriff to work would be to approve an open-ended appropriation for this purpose. We do not perceive such an interpretation to be the law. By the same token we do not believe the commission can circumvent the law by refusing to appropriate any money for overtime pay. To say that it can, would be to say that the commission could refuse to appropriate any money for gasoline, office supplies, or equipment. Such authority could effectively be used to seriously curtail, if not stop, law enforcement efforts by the sheriff. We cannot find that the legislature had any such intention when it enacted the Budget Control Act.
We conclude, therefore, that the legislature has conferred the authority on the Randolph County Commission to appropriate an overall amount of money for the operation of the sheriff's office. Such appropriation will include mandated sums as well as discretionary sums. Such appropriation should include a sum of money for the payment of overtime work by deputy sheriffs just as it provides for the payment of gasoline, oil, office expenses, equipment purchases, etc. The failure to include a specific appropriation for the payment of overtime work cannot prevent the payment for such work. The only limitation will be the overall appropriation to the sheriff's office.
The judgment of the trial court is reversed and the cause is remanded for entry of judgment consistent with this opinion.
The Randolph County Commission has filed notice of cross-appeal on the issue of overtime pay awarded to the deputies. Since this issue is not raised in its brief, we are unable to consider it.
REVERSED AND REMANDED WITH DIRECTIONS.
WRIGHT, P.J., and HOLMES, J., concur.